MONROE SAND AND GRAVEL CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75782.  Promulgated October 26, 1937.

*Robert A. Littleton, Esq., Allan Sholars, Esq.,* and *Sol Weil, C. P. A.,* for the petitioner.
*E. A. Tonjes, Esq.,* for the respondent.

### OPINION.

TYSON: The respondent has asserted income tax deficiencies in the amounts of $1,666.77 and $5,620.32 for the calendar years 1930 and 1931, respectively. Petitioner assigns the following errors:

For the year 1929, the respondent's failure to allow deductions of $11,530 as bad debts, $4,736.63 as depletion or amortization of the cost of leases, and $2,022.22 as commissions, for the purpose of determining the amount of petitioner's net loss to be carried over to the taxable year 1930.

For the year 1930, the respondent's failure to allow a deduction of the 1929 net loss predicated upon redetermination of the above assignments of error and, also, deductions of $3,044.86 as deprecia-. tion, $7,452.61 as commissions, and $212.31 as a loss.

For the year 1931, the respondent's failure to allow a deduction of the 1930 net loss predicated upon redetermination of the immediately preceding assignments of error and, also, deductions of $3,248.24 as depreciation and $8,412.49 as commissions.

The respondent denied all of such assignments of error, and further answering the respondent affirmatively alleges that in determining petitioner's net taxable income for the years 1930 and 1931 he erred as follows:

For the year 1930, that respondent allowed a deduction claimed by petitioner in the amount of $21,153.79 as royalties, whereas $8,483.02 thereof was erroneously allowed in that such amount "does not constitute an allowable deduction", and that the correct deficiency is $3,044.73 for the year 1930.

For the year 1931, (1) that respondent allowed a deduction claimed by petitioner in the amount of $34,950.79 as royalties, whereas $14,001.68 thereof was erroneously allowed in that such amount "does not constitute an allowable deduction"; (2) that of $8,679.89 claimed by petitioner as a deduction for commissions, the respondent disallowed $8,412.48, whereas the amount disallowed should be increased by $201.40; (3) that respondent allowed a deduction claimed by petitioner in the amount of $26,400 as compensation of officers, whereas $13,200 thereof was erroneously allowed in that such last amount "does not constitute an allowable deduction", and that the correct deficiency is $8,908.69 for the year 1931. Respondent prays that the Board redetermine the deficiencies to be in the alleged increased amounts. Petitioner's reply denies that the respondent erred in any of the respects as affirmatively alleged in his answer.

At the hearing, petitioner waived and abandoned its assignments of error involving a claimed deduction for 1929 as depletion, in the amount of $4,736.63, which was disallowed by the respondent, and also its claim, made at the hearing, for deductions as depletion in the amounts of $5,653.36 for 1930 and $9,334.45 for 1931. On brief petitioner concedes that it is not entitled to a deduction of $11,530 as a bad debt for 1929. On brief the respondent concedes that petitioner is entitled to the claimed deduction of $2,022.22 as commissions for 1929, resulting in a net loss for that year; to the claimed deduction of $212.31 as a loss for 1930; to the claimed deductions as commissions in the amounts of $7,452.61 for 1930 and $8,412.48 for 1931; and to the claimed deductions for each of the years 1930

and 1931 for depreciation at the rates of 12½ percent on boat No. 2, 12½ percent on the dragline, and 20 percent on the wash plant, based on the stipulated cost of each of those items of property. Effect to the above concessions by both parties will be given in the recomputation under Rule 50.

On brief both parties state that the only remaining issues presented to the Board for redetermination are those affirmatively pleaded by respondent and involving the questions of deductions as (1) royalties for 1930 and 1931, and (2) salaries for 1931.

The petitioner is a Louisiana corporation, engaged in the sand and gravel business. It was incorporated in November 1922, with an authorized capital stock of $25,000, which, by amendment to its charter in January 1923, was increased to the sum of $125,000, divided into 1,250 shares of the par value of $100 each. At or about that time the petitioner acquired the Heard and Faulk leases granting to it the exclusive right, for a period of years, to excavate and sell sand, clay, and gravel from certain described property situated in the Parish of Ouachita at specified royalties per cubic yard to be paid to the owners of such property. Such leases were acquired for stock and were capitalized on petitioner's books in the amount of $100,000. From the time of the acquisition of those leases to and including the year 1931, the petitioner has been engaged in the business of excavating and selling sand and gravel from the properties embraced in those leases.

In the early part of 1926 the petitioner was having financial difficulties and was threatened with insolvency proceedings. It owned the Heard and Faulk leases, which had considerable value, but its machinery and equipment had little value and was practically worthless for the purposes for which it was being used. Petitioner's indebtedness at that time amounted to approximately $130,000 and it was without funds.

Prior to about March 24, 1926, Ralph S. Thornton and H. H. Holloway had no interest in the petitioner or the Heard and Faulk leases. On or about that date they each acquired 25 percent of the petitioner's outstanding stock and the other 50 percent of petitioner's outstanding stock remained in the ownership of T. E. Stevens. The sum of $8,000 cash was paid for the stock so acquired but the record is not clear as to whether Holloway paid that amount individually or whether it was paid by both Holloway and Thornton. Petitioner's indetedness of approximately $130,000 was assumed or underwritten by Holloway and Thornton at the time they purchased their stock. Under date of March 24, 1926, they entered into a written agreement with petitioner, pursuant to resolutions of its board of directors and stockholders. Such agreement provided that in con-

sideration of the financial "services and assistance and activities" theretofore performed and agreed to be thereafter performed by Thornton and Holloway, the petitioner obligated itself to pay them in equal proportions, "the sum of Five Cents per cubic yard on and for all material mined and sold and delivered from the Faulk and Heard leases in Ouachita Parish", during the full term and life and operation of such leases or renewals thereof.

Without the execution of such agreement, Thornton and Holloway would not have invested in petitioner's stock or loaned it their credit by assuming or underwriting the petitioner's indebtedness of approximately $130,000 and by guaranteeing or pledging further financial assistance as conditions might demand. The payments to be made Thornton and Holloway, pursuant to that agreement, had no connection with any salaries which would be or were paid to Thornton and Holloway as officers of the petitioner, nor were such payments dependent upon their continued connection with the petitioner. Such payments, measured by 5 cents per cubic yard for all material mined, sold, and delivered, constituted compensation under the agreement of March 24, 1926, for services of Holloway and Thornton in rendering financial assistance by assuming or underwriting petitioner's indebtedness of approximately $130,000 and for their undertaking to render such further financial assistance as might be necessary in the continued operation of the business of petitioner.

Holloway and Thornton devoted the necessary amount of time and attention to the affairs and the operations of petitioner. As rapidly as possible petitioner's old machinery and equipment was abandoned or junked, the proper kind of machinery was purchased, and a different method of operation was installed. During 1929 to 1931, inclusive, petitioner's gross sales showed a material increase. In 1929 Thornton and Holloway bought the shares of petitioner's stock then held by T. E. Stevens. During 1930 and 1931 Holloway was president and Thornton was secretary and treasurer of the petitioner.

From March 24, 1926, to and including the year 1931, the amounts due under the above mentioned agreement were credited on petitioner's books to the accounts of Thornton and Holloway. Petitioner kept its accounts on the accrual asis. In its income tax return for 1930 the petitioner took a deduction of $21,153.79 as royalties, which amount included the sum of $8,432.02 credited in that year to the accounts of Thornton and Holloway under the said agreement. In its income tax return for 1931, the petitioner took a deduction of $34,950.79 as royalties, which amount included the sum of $14,-001.68 credited to the accounts of Thornton and Holloway under the said agreement.

The respondent has made a broad affirmative allegation that each of the above mentioned amounts of $8,432.02 for 1930 and $14,001.68 for 1931, claimed by petitioner as a deduction for royalties and allowed by respondent in his determination of petitioner's tax liability for each of those years, "does not constitute an allowable deduction." On brief he contends that such amounts did not constitute royalties and that therefore he was in error in allowing the deduction thereof as royalties; that there is no proof that such amounts constituted reasonable compensation for services actually rendered in those taxable years and therefore such amounts are not deductible as "a reasonable allowance for salaries or other compensation for personal services actually rendered", as provided in section 23 (a) of the Revenue Act of 1928; and that they did not constitute such ordinary and necessary business expenses as justified their deduction.

Upon this record, we conclude and so find that the said credits to the accounts of Thornton and Holloway, pursuant to their agreement with petitioner, were not for royalties, since neither Thornton nor Holloway owned any interest in the land of which petitioner was the lessee and the credits due them under the agreement were not made by petitioner for its use or right to extract sand and gravel from such land. Cf. *W. N. Thornburgh Manufacturing Co.*, 17 B. T. A. 29, 34; *L. Schepp Co.*, 25 B. T. A. 419. Accordingly, such amounts are not properly deductible *as royalties* or "rentals or other payments required to be made as a condition to the continued use or possession, * * * of property", to which the taxpayer had no title or equity, as provided by section 23 (a) of the Revenue Act of 1928. We further conclude and so find that the credits did not constitute "salaries" within the meaning of section 23 (a), *supra*, for they were not made as compensation in addition to the regular salaries of Thornton and Holloway for services actually rendered in those taxable years.

However, the respondent having affirmatively pleaded that the said amounts are not "allowable deductions", he must sustain his burden of proof. Section 23 (a) of the Revenue Act of 1928 contains a broad provision for the deduction of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." The credits due Thornton and Holloway under petitioner's contractual obligation were not a division or distribution of petitioner's net profits, but constituted a charge against petitioner's gross receipts, irrespective of the amount of its net profits, if any. The petitioner's contractual obligation was in consideration for the financial assistance of Thornton and Holloway to assure petitioner's financial integrity and the continued oper-

ation of its business enterprise. This obligation was a charge upon the maintenance and operation of petitioner's business and, in our opinion, the credits in the amounts of $8,432.02 for 1930 and $14,001.68 for 1931 made pursuant to such obligation constituted ordinary and necessary expenses incurred in petitioner's business and, as such, are allowable deductions. Cf. *La Monte & Son* v. *Commissioner*, 32 Fed. (2d) 220, reversing 13 B. T. A. 365, and *Louis C. Rollo*, 20 B. T. A. 799. The respondent has therefore obviously failed to sustain his burden of proof on this issue raised by his affirmative pleading.

In regard to the second issue, involving the question of salaries, the record discloses that during the year 1931 there was credited monthly on petitioner's books, officers' salaries in the total amounts of $14,400 to Holloway and $12,000 to Thornton. On its return for the year 1931, petitioner claimed such amounts, totaling $26,400, as a deduction for salaries. The respondent allowed such claimed deduction, but by his affirmative pleading alleges that his allowance thereof was erroneous to the extent of $13,200. Respondent contends that the officers' salaries, totaling $26,400, were unreasonable. The record fails to establish that such officers' salaries claimed by petitioner and heretofore allowed by respondent were unreasonable, but on the contrary, Holloway, the only witness testifying directly on this point, although an interested one, testified that such salaries were reasonable for the services rendered. Accordingly, respondent has failed to sustain his burden of proof on this issue raised by his affirmative pleading.

*Decision will be entered under Rule 50.*