Davis B. Thornton, Transferee of D. B. Thornton Company, a Corporation, (Formerly Cromer & Thornton, Inc.) v. Commissioner. D. B. Thornton Company, (Formerly Cromer & Thornton, Inc.) v. Commissioner.
Thornton v. Commissioner
Docket Nos. 3563, 3564.
United States Tax Court
1945 Tax Ct. Memo LEXIS 351; 4 T.C.M. (CCH) 29; T.C.M. (RIA) 45011; January 11, 1945
Philip H. Alston, Esq., 1220 Citizens & Southern Nat'l Bank Bldg., Atlanta, Ga., and A. H. Eidson, C.P.A., for the petitioners. Leonard Raum, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve liability for Federal income tax, declared value excess-profits tax, and excess-profits tax for the taxable *352 year ended February 28, 1941, as follows: Income tax
$2,694.06
Declared value excess-profits tax
812.11
Excess-profits tax
2,168.78
Petitioner in docket number 3563 is the transferee of the petitioner in docket number 3564 and admits transferee liability. The contested issues relate to the respondent's disallowance of the following amounts claimed as deductions: a. $1,000 as attorneys' fees. b. $1,281.45, fee for hiring borrowed collateral. c. $6,980, accrued salary of the president and treasurer of corporate petitioner. Petitioners claim the right to deduct the sum of $137.50 as additional state income taxes accrued as of February 28, 1941, but which were assessed and paid subsequent to the filing of the Federal income tax return for the period involved. Findings of Fact Petitioner in docket number 3564 was a corporation with its principal place of business at 215 Decatur Street, Atlanta, Georgia. It kept its books and filed its tax returns on the accrual basis of accounting. Its Federal income, declared value and excess-profits tax return for the fiscal year ended February 28, 1941, was filed with the collector of internal revenue for the district *353 of Georgia. The petitioner in docket number 3563, Davis B. Thornton, is an individual residing at No. 506 Argonne Drive, Atlanta, Georgia. He computes his net income and files his Federal income tax returns on a cash and calendar year basis. Thornton was vice president and treasurer of Cromer & Thornton, Inc., which name was later changed to D. B. Thornton Company (hereinafter referred to as the "Corporation"), until November 16, 1940, and after that date was president until the Corporation was dissolved on June 30, 1941. In the taxable year the Corporation had 500 shares of capital stock outstanding. Petitioner, Thornton, owned 250 shares and 250 shares were owned by Charles F. Cromer, the latter being the president of the Corporation until November 16, 1940. For several years the two stockholders and officers were unable to operate the Corporation in harmony. The feeling between them grew in intensity. All efforts to compose their differences were unsuccessful. Finally, on September 5, 1940, Cromer filed a bill of complaint in a stockholder's derivative suit against Thornton and Mrs. M. M. Anderson, assistant treasurer, charging waste and ultra vires acts and praying for an accounting, *354 damages and certain injunctive relief. The Corporation was named as a party defendant. The court entered an ex parte temporary restraining order. Thornton, as individual defendant, filed an answer and cross bill praying, inter alia, for the appointment of a receiver. No answer was filed on behalf of the Corporation. After hearings, the court, on October 21, 1940, dissolved the temporary injunction and declined to appoint a receiver. The case was dismissed and costs assessed against Cromer. Counsel for Thornton were of the opinion that the interests of the Corporation could be protected by Thornton's defense to the suit. If the temporary injunction procured by Cromer continued in force the Corporation might not be able to carry out certain of its contracts it had become obligated to perform. The attorneys having succeeded in dissolving the injunction, the Corporation actually benefited by their services to some extent. The value to the Corporation of the legal services rendered by Thornton's attorneys was the sum of $200. After further negotiations Cromer agreed to sell his 250 shares of the capital stock, which were purchased on November 16, 1940 in the name of the Corporation and *355 held as treasury stock. The firm of Etheridge and Sams handled the legal business of the Corporation from 1919 until its dissolution in 1941. Mr. Philip H. Alston, of the law firm of Alston, Foster, Sibley & Miller, was Thornton's personal attorney and represented him in the negotiations looking to an amicable adjustment of his dispute with Cromer. When the latter filed his bill, in the stockholder's suit, that firm appeared on behalf of Thornton in the defense of this action. It continued to serve in the negotiations leading up to the purchase of the Cromer stock by the Corporation on November 16, 1940. For its legal services, the firm of Alston, Foster, Sibley & Miller rendered a bill to the Corporation for $1,500. The bill was adjusted and the Corporation paid the firm $1,000. The ledger of that firm shows that it received $1,000 from the Corporation as "Fee Re: Cromer, Charles F. Cromer v. D. B. Thornton, et al, and the purchase of Cromer's stock in Cromer & Thornton, Inc." In its Federal income tax return for the period involved the Corporation claimed a deduction of $1,000 as legal fees paid. The respondent disallowed the entire amount claimed. The Corporation paid Cromer *356 $41,000 for his 250 shares of stock. In order to secure the necessary cash to make the purchase the Corporation borrowed $30,000 from the First National Bank of Atlanta, Georgia. The loan was evidenced by two notes of $15,000 each. As collateral securing that loan, the Corporation assigned to the bank policies of insurance on the life of D. B. Thornton having a face value of $42,500, in which it was named as beneficiary; also policies on the life of D. B. Thornton having a face value of $51,000, in which Thornton's wife, Lucy B. Thornton, was named as beneficiary. The cash surrender value of the policies in which Mrs. Thornton was named as beneficiary amounted to $12,885 in November 1940. In these policies Thornton had the right to change the beneficiary. Mr. and Mrs. Thornton jointly assigned their interest in such policies to the said bank. In addition, Thornton furnished 10 shares of American Telephone & Telegraph Company stock which was deposited as collateral with the bank. The Corporation gave Thornton its demand note in the amount of $12,885, dated November 19, 1940 and bearing interest at 8 per cent. The Corporation could not have procured the aforesaid loan without the use *357 of the policies of insurance on the life of Thornton in which Mrs. Thornton was named as beneficiary. In the taxable year ended February 28, 1941, the Corporation paid to the insurance companies as premiums on the policies in which Mrs. Thornton was named as beneficiary the sum of $1,281.45. This payment was shown on the Corporation's books in the following manner: There was a credit to "cash" at some time in the taxable year of $1,281.45 and a debit against an account called "Life Insurance Premiums Paid" of $1,281.45; on February 28, 1941, that entry was reversed in the following manner, to wit: "Life Insurance Premiums Paid" was credited with $1,281.45 and there was debited against Davis B. Thornton $1,281.45., another entry was made crediting Davis B. Thornton with a like amount; and another account called "Fees for Use of Borrowed Collateral" was debited with the amount of $1,281.45. In its Federal income tax return for the period involved, the Corporation claimed a deduction of the sum of $1,281.45 as "Fees (Borrowed Collateral)." In the taxable year ended February 28, 1941, the Corporation charged $8,480 as salary due its president, D. B. Thornton, to its salary account for *358 that year, and credited D. B. Thornton with the same amount. Of that amount $6,980 was not actually paid within two and one-half months after the close of the fiscal year on February 28, 1941. The entire amount was paid within the calendar year 1941. D. B. Thornton included the sum of $8,480 in his individual Federal income tax return for the calendar year 1941. At the close of the taxable year the stock ownership of the Corporation was as follows: Davis B. Thornton
240 shares
Mrs. Lucy B. Thornton
10 shares
Treasury stock
250 shares
There was no change in the stock ownership at any time within two and one-half months after the close of the Corporation's taxable year ended February 28, 1941. The balance sheet of the Corporation as of February 28, 1941 shows assets and liabilities as follows: ASSETS
Cash
$9,811.04
Notes and Accounts Receivable
22,665.01
Inventories
12,806.96
Fixed Assets -
Leasehold Improvements
$5,567.20
Machinery, Furniture and Equipment
30,657.31
Autos and Trucks
45,771.17
$81,995.68
Depreciation
51,600.24
30,395.44
Employees' Accounts Receivable
137.44
Cash Value Life Insurance
3,699.00
Prepaid Expenses
1,886.16
Borrowed Collateral
12,885.00
18,607.60
$94,286.05
LIABILITIES
Accounts Payable
$20,423.35
Bonds, Notes and Mortgages
15,000.00
Accrued Wages
$149.62
Accrued Taxes
506.59
Due Officer
21,365.00
22,021.21
Accrued Income Tax
16,168.19
Capital stock
50,000.00
Treasury stock
(25,000.00)
25,00.00
Surplus
(4,326.70)
$94,286.05
*359 The Corporation was in a solvent condition on February 28, 1941. It had an unused line of credit with the First National Bank of Atlanta, Georgia, of from $15,000 to $20,000. D. B. Thornton, as president of the Corporation, had authority to sign checks on the corporate funds. On May 8, 1942, the State of Georgia made an assessment for additional income taxes against the Corporation for the period ended February 28, 1941 in the amount of $137.50. This amount was paid on May 27, 1942. The assessment was made subsequent to the time the Corporation filed its Federal income tax return for the period involved and the said amount was not claimed thereon. The Corporation has not heretofore been allowed any deduction on its Federal income tax return for the period involved of this sum of $137.50. Opinion The first issue concerns the propriety of the respondent's disallowance of a $1,000 deduction paid by the Corporation for legal services claimed as an ordinary and necessary business expense in carrying on its business. The respondent based his disallowance upon the ground that the fee was paid in connection with a suit filed by a stockholder and was a personal expense under section 24 (a) of the Internal Revenue Code *360 . The circumstances surrounding the employment of the attorneys and the services performed in connection with their retainer are set forth in detail in our findings of fact. It appears that at least a part of the services upon which the attorneys based their charges were rendered in resisting a stockholder's suit brought against certain officers individually and in which the Corporation was a nominal defendant only. Concededly, the Corporation could not legally pay those attorneys for services they rendered the individual officers in defending a suit of that character. However, we have found as a fact that the Corporation received a benefit from the legal services rendered in Thornton's defense of the suit instituted by Cromer. The record furnishes no means by which the legal services from which the Corporation benefited can be exactly valued. We are not relieved by that fact, however, from the duty of making an approximate appraisal of their worth. Cohan v. Commissioner, 39 Fed. (2d) 540. Considering all the circumstances, we are of the opinion that the value of the legal services rendered to the Corporation was $200 and have so found as a fact. We conclude that the Corporation *361 is entitled to deduct the sum of $200 as attorneys' fees under section 23 (a) (1) (A) of the Internal Revenue Code. The second issue relates to the denial of a deduction of $1,281.45, claimed as a fee for hiring of borrowed collateral. The respondent premised his disallowance on the ground that the amount represents the payment of premiums on life insurance policies of a stockholder, the deduction of which is prohibited by section 24 (a) (4) of the Internal Revenue Code. The record discloses that in order to settle the dispute between the two stockholders owning all of the shares of capital stock, the Corporation desired to purchase all the shares of one of such stockholders. The Corporation was compelled to resort to a bank loan to enable it to make the purchase. The Corporation, not having sufficient collateral to secure the loan, borrowed from its stockholder, D. B. Thornton, certain insurance policies on his life, which he and his wife, the named beneficiary, assigned to the bank. The cash surrender value of the policies at the time was $12,885. For this amount the Corporation delivered to Thornton its demand note, bearing interest *362 at 8 per cent. It is not clear from the record when it was agreed that a fee was to be paid for the loan of this collateral. It may be inferred that Thornton did not intend the loan to be made without consideration. He did claim and received consideration from the Corporation. The respondent stresses the fact that the Corporation paid insurance premiums on these policies. He points to the fact that the original book entries showed a credit to cash and a debit against an account called "Life Insurance Premiums Paid" of the sum of $1,281.45. On the last day of the fiscal year, February 28, 1941, reversing entries were made. The "Life Insurance Premiums Paid" account was credited with $1,281.45; the account of Davis B. Thornton was both debited and credited with the amount of $1,281.45; and an account called "Fees for Use of Borrowed Collateral" was debited with a like amount. On the Corporation's Federal income tax return the deduction was described as "Fees (Borrowed Collateral)". We do not think the fact that the Corporation issued a check for the amount of the insurance premiums or the original book entry debiting an insurance premiums account is controlling. Thornton was not obligated *363 to loan his collateral to the Corporation. He could demand a reasonable fee for its use. It was within the province of the Corporation to borrow collateral for corporate purposes and to agree to pay a reasonable fee therefor. To the extent that the fee is reasonable the amount paid is an ordinary and necessary business expense in carrying on the Corporation's trade or business. Cf. M. A. Long, 8 B.T.A. 737; Monroe Sand & Gravel Co., 36 B.T.A. 747. The fact that the fee charged was equal to the amount of insurance premiums is without significance if the fee exacted is reasonable. Life insurance policies have an intrinsic value bevond the cash surrender value. Under the circumstances disclosed by this record, we find the fee was reasonable. The respondent erred in disallowing the deduction of $1,281.45, claimed as fees for borrowed collateral. The third issue involves the question of the deduction of $6,980, that part of the accrued salary of the president and treasurer of the Corporation which was not actually paid within two and one-half months after the close of the fiscal year of the Corporation ended February 28, 1941. We have found as facts that: this *364 amount was charged as salary to the salary account of the Corporation and credited to the account of its president and treasurer before the end of that fiscal year; the Corporation was solvent and, in addition to an unused line of credit of from $15,000 to $20,000 with its bank, it had sufficient cash available for the payment of the salary accrued; the officer to whom the salary was due had authority to issue a check in payment thereof; and such officer, on the cash basis, reported the entire amount in his income tax return for the calendar year 1941. That was the year "* * * in which * * *" the taxable year of the Corporation, taxpayer, ended. On these facts, upon the authority of Michael Flynn Manufacturing Co., 3 T.C. 932. we held that the deduction of this entire accrued salary is not prevented by section 24 (c) (2) [1] of the Internal Revenue Code. Accordingly, the petitioner corporation is entitled to the contested deduction of the sum of $6,980 under section 23 (a) (1) (A) of the Code. Accordingly, the petitioner corporation is entitled to the contested deduction of the sum of $6,980 under section 23 (a) (1) (A) of the Code. *365 The final issue relates to an item of $137.50, representing additional state income taxes paid by the Corporation. The tax was accrued as of February 28, 1941, but was assessed and paid after the Federal income tax return was filed. The issue was first raised in the petitions filed herein. The only contention made by the respondent is that the petitioners have not proven that the above sum was not included in the additional $418.84, allowed as a deduction in his deficiency notices. The evidence establishes to our satisfaction that the amount of $137.50 has heretofore neither been claimed nor allowed as a deduction. We conclude that the Corporation is entitled to deduct the sum of $137.50, pursuant to section 23 (c) (1) of the Internal Revenue Code. Decisions will be entered under Rule 50. Footnotes
1. Sec. 24, I.R.C.
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued - * * * * *
(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; * * *↩